IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| AMERICAN EAGLE OUTFITTERS, INC., A DELAWARE CORPORATION; AND RETAIL ROYALTY COMPANY, A NEVADA CORPORATION; | ) ) ) ) ) | 2:20-CV-00412-MJH |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| WALMART, INC., A DELAWARE CORPORATION; | | |
| Defendant, | | |

OPINION

Plaintiffs, American Eagle Outfitters, Inc. and Retail Royalty Company (collectively "AEO"), bring the within action for False Designation of Origin, and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III) against Defendant, Walmart, Inc. (ECF No. 1). AEO now moves for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 73). Walmart has also moved to strike (ECF No. 87) certain exhibits (ECF Nos. 76-32 through 76-50 and 77-1 through 77-32) filed in support of AEO's motion. These matters are now ripe for consideration.

Following consideration of AEO's Motion for Summary Judgment (ECF No. 73), the respective briefs (ECF Nos. 74, 84, and 89), Concise Statements of Material Facts (ECF Nos. 75 and 85), Appendices (ECF Nos. 76-79, 86), the arguments of counsel, and for the following reasons, AEO's Motion for Summary Judgment will be denied. Because the Court finds questions of fact unrelated to AEO's exhibits (ECF Nos. 76-32 through 76-50 and 77-1 through

77-32), Walmart's Motion to Strike (ECF No. 87) will be denied as moot at this time, without prejudice to the same be being refiled at a later point in the litigation.

I.       Background

AEO asserts that, in 2003, AEO began using a particular back pocket stitch ("BPS") on its women's denim jeans, pants, shorts, and skirts. (ECF No. 85 ¶ 16, 23).  Said BPS appears as follows:



AEO further asserts that the primary purpose of the BPS logo is to serve as a brand symbol.  *Id*. at ¶ 24.   On May 27, 2004, the U.S. Patent and Trademark Office (USPTO) rejected AEO's U.S. Trademark Application for the BPS design, stating that it was a decorative or ornamental feature of the goods and would not be perceived as a mark by the purchasing public.  *Id*.

In 2018, Walmart introduced a line of women's jeans under the private label Time and Tru (the "T&T jeans").  *Id*. at ¶ 87. In summer 2018, Walmart introduced T&T jeans featuring the BPS design as follows:



*Id.*

AEO asserts that Walmart's BPS infringes on its BPS trademark and claims False Designation of Origin and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III).

In its motion for summary judgment, AEO purports to seek judgment on each of its three claims. (ECF No. 73). However, AEO's brief in support only substantively addresses trademark infringement.[1] (ECF No. 74). Accordingly, the Court will only address the trademark infringement issue as briefed by the parties.

I.      Standard of Review

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her

---

[1] AEO's counsel confirmed the same at oral argument.

3

case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II.   Discussion

"A claim of trademark infringement is established when the plaintiff proves that: (1) its mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000).

### A.   Validity, Protectability, and Ownership

If the mark at issue is federally registered and has become incontestable, then validity, legal protectability, and ownership are proved. *See Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir.1991). If the mark has not been federally registered or, if registered, has not achieved incontestability, then "validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." *Id*. A plaintiff must establish secondary meaning in a mark at the time and place that the defendant began use of the mark. *See Scott Paper Co. v. Scott's Liquid Gold*, Inc., 589 F.2d 1225, 1231 (3d Cir.1978).

The parties do not dispute that AEO's BPS is not federally registered.  AEO contends that it owns valid and enforceable trademark rights to its BPS because it is inherently distinctive and has acquired a secondary meaning.  Wal-Mart maintains that AEO's BPS design is neither inherently distinctive nor capable of secondary meaning.

### 1.   Inherent Distinctiveness

Two tests have emerged in trademark jurisprudence to determine whether a mark is inherently distinctive or requires proof of secondary meaning.  *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976); *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977).  As regards inherent distinctiveness, under *Abercrombie*, trademarks are deemed to fall into one of five categories along a spectrum of increasing distinctiveness: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or (5) fanciful." *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  In addition, under *Seabrook*, the test asks: (1) whether the design or shape at issue is a common, basic shape or design; (2) whether it was not unique or unusual in a particular field; (3) whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers would view as mere ornamentation.  568 F.2d at 1344.

"[T]he question of inherent distinctiveness almost always involves heavily disputed facts and so is not ordinarily amenable to summary judgment. *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 377 (4th Cir. 1999) (citing *Mana Products, Inc. v. Columbia Cosmetics Mfg.*, 65 F.3d 1063, 1069 (2d Cir.1995). Whether a mark is inherently distinctive and whether it has acquired secondary meaning are questions of fact. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010); see also *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007).

AEO maintains that its BPS qualifies as an inherently distinctive trademark under either *Abercrombie* or *Seabrook*. AEO contends its BPS is fanciful under *Abercrombie*. As regard *Seabrook*, AEO argues that its BPS logo is not merely a "common basic shape," a "mere refinement," or "merely ornamental." Rather, it maintains that its BPS logo, with its bold "signature curve," is unique.   In support of its inherent distinctiveness argument, AEO invokes

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir.1986) as a textbook

case of trademark infringement because it also addressed back pocket stitching patterns of rival

jean manufacturers. Particularly, AEO highlights that, in *Lois Sportswear*, the Second Circuit

held that Levi's BPS pattern deserved the highest degree of protection because its mark was

"fanciful pattern of interconnected arcs" under *Abercrombie*. *Id*. at 871.

      Walmart argues that the evidence establishes that AEO's BPS is not inherently

distinctive; but rather, it is decorative or ornamental.  Walmart notes that, as referenced above,

the USPTO rejected AEO's application to register its BPS because it was deemed to be a

"decorative or ornamental feature" on a back-pocket that "would not be perceived as a mark by

the purchasing public." (ECF No. 86-13).   Walmart also asserts that industry professionals and

consumers consider a BPS as decorative.  Angela Duen, a former employee of Nanjing, the

designer of the Walmart T &T jeans, testified as follows:

> Q. Do you know in general why denim companies, denim brands use back pocket
> stitching?
>
> A. Essentially decorative. It's decorative.
>
> Q. And how do you know that?
>
> A. Because I've designed back pockets before and it depends on what the trend is, right.
> So I believe it is -- has a lot to do with trend, right, who is doing back pockets,
> who isn't doing back pockets. So it ends up being somewhat decorative.

(ECF No. 86-3 at p. 11)). Elizabeth Jehl, Walmart's Rule 30(b)(6) witness, characterized back-

pocket stitching as a "design element." (ECF No. 86-5).  In AEO's 2018 internal study of its

BPS, consumer comments included the following: "I like pocket designs, but never considered

them as a branding method;" "I like the back pocket design because it adds some color;" "I like

the beautifully embellished back pockets." (ECF No. 76-10).

As regards AEO's reliance on *Lois Sportswear*, Walmart contends that, in that case, the BPS was a registered trademark, which entitled it to a presumption of validity. 799 F.2d at 871. Walmart maintains that, unlike *Lois Sportswear*, AEO cannot rely on the registration of its stitch design as evidence of distinctiveness. Moreover, Walmart argues that the distinctiveness of stitch designs in other cases should have no bearing on the distinctiveness of the AEO stitch design at issue in this case.

Here, there are conflicting arguments and evidence as to where AEO's BPS falls on the *Abercrombie*'s spectrum of increasing distinctiveness, or as to whether AEO's BPS is considered mere ornamentation under *Seabrook*.   And, while *Lois Sportswear* offers a tempting factual analogy in relation to jeans' back pocket stitching, the Second Circuit's inherent distinctiveness analysis gave significant deference to the manufacturer's federally registered trademark.  Such fact is absent here.  Further, *Lois Sportswear* does not even address any clear and independently derived standard and analysis for inherent distinctiveness where a BPS is not federally registered. In addition, and respectfully, the Second Circuit's reasoning on the fancifulness of Levi's BPS is conclusory and offers no persuasive guidance for this Court's summary judgment analysis of AEO's BPS and its inherent distinctiveness.   Instead, as observed in *Ashley Furniture*, the concept of distinctiveness is an "intuitive" one.  187 F.3d at 377.  Thus, a question of material fact is presented, and the record does not support a finding of inherent distinctiveness at the summary judgment stage.  Accordingly, for AEO to establish an enforceable trademark right, AEO must prove secondary meaning.

   2.   Secondary Meaning

   "Secondary meaning exists when the mark 'is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of

those products or services.'" *Commerce Nat'l Ins. Servs.*, 214 F.3d at 438 (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir. 1978)). The Third Circuit has articulated a lengthy, but non-exclusive, list of factors for determining whether a mark has acquired secondary meaning, which includes: (1) extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) fact of copying; (5) customer surveys; (6) customer testimony; (7) use of mark in trade journals; (8) size of company; (9) number of sales; (10) number of customers; and (11) actual confusion. *Commerce Nat. Ins. Services, Inc.*, 214 F.3d at 438. Whether secondary meaning was established prior to the alleged infringement is also a question of fact for the jury to determine. *Tillery v. Leonard & Sciolla*, *LLP*, 521 F.Supp.2d 346, 349 (E.D. Pa. 2007).

AEO argues that its BPS logo has acquired secondary meaning because the record supports that it has sold millions of units of women's jean with the BPS; it has sold said jeans for 18 years; it has advertised said jeans featuring the BPS; it has exclusively used its BPS until Walmart's BPS; Walmart allegedly copied AEO's BPS; AEO's internal marketing studies demonstrated consumer recognition of its BPS; and AEO has found actual confusion from consumer comments.

Walmart maintains there is ample evidence from which a jury could find no association between AEO's BPS and AEO.  In support of this contention, Walmart asserts that three witnesses' testimonies, (two Walmart employees and AEO's own expert witness), confirm a lack of familiarity with the AEO BPS.  Walmart also argues that AEO did not present evidence of any specific "secondary meaning" survey and that AEO's internal market survey has been criticized by AEO's own survey expert, Dr. Simonson.

Here, any conclusions to be drawn, based upon evidence relevant to secondary meaning, are best evaluated by the factfinder. The record presented on secondary meaning includes surveys, customer comments, witnesses, and experts whose credibility must be fully evaluated by the jury. Walmart's witnesses, Elizabeth Jehl and Barbara Bakalic, testified that they could not independently identify AEO jeans through BPS. (ECF Nos. 76-6 and 86-6). Lynn Downy, AEO's expert witness, testified that she was not aware of AEO's BPS. (ECF No. 86-9). Based upon the record before it, the Court finds that there are genuine issues of material facts in regard to the secondary meaning factors. Those factors and the credibility determinations associated with each are best evaluated by the factfinder. Therefore, the Court will deny AEO's motion for summary judgment, as regards secondary meaning.

B.   Likelihood of Confusion

In order to prove its common law trademark infringement claim, AEO must show that Walmart's "use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). In the Third Circuit, the factors laid out in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983) present a framework to determine whether a likelihood of confusion exists. These *Lapp* factors are:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior

9

owner to manufacture a product in the defendant's market, or that he is likely
to expand into that market.

721 F.2d 460, 463 (3d Cir. 1983). "The *Lapp* factors are best understood as 'tools to guide a qualitative decision.' None of them in itself is determinative and each must be 'weighed and balanced' based on the particular facts of the case." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 320 (3d Cir. 2015) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004)). "Not all factors will be relevant in all cases; further, the different factors may properly be accorded different weights depending on the particular factual setting. A district court should utilize the factors that seem appropriate to a given situation." *Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005). The Third Circuit has stated that "[f]ailure to strictly observe the principles governing summary judgment becomes particularly significant in a trademark or tradename action, where summary judgments are the exception." *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1062-63 (3d Cir. 1991). The "likelihood of confusion analysis in a trademark case is a fact-intensive inquiry, and cannot typically be decided at the summary judgment stage." *Lontex Corp. v. Nike, Inc.*, CV 18-5623, 2021 WL 724971, at *11 (E.D. Pa. Feb. 24, 2021).

AEO argues that Walmart's BPS creates a likelihood of confusion with AEO's BPS according to the factor test set forth in *Lapp* and that summary judgment is appropriate. Walmart contends that an analysis of the *Lapp* factors raises disputed issues of material fact. Here, a *Lapp* analysis of the factors as argued by the parties, also leads to the conclusion that this case presents questions of material fact that preclude summary judgment.

As regards the first *Lapp* factor, similarity of marks, visual reference to the two BPS products reveals that there are both similarities and differences that require resolution by a

factfinder to conclude whether or not the marks are confusingly similar.  Thus, this Court cannot determine, as a matter of law, that this *Lapp* factor supports granting summary judgment.

As regards mark strength, AEO maintains that its BPS is inherently distinctive, whereas Walmart argues that the BPS is merely decorative or ornamental.   As analyzed above, there exist issues of material fact as regards both inherent distinction and secondary meaning. Thus, this Court cannot determine, as a matter of law, that this *Lapp* factor, assessing mark strength, supports the grant of summary judgment.

As regards Walmart's intent in adopting its BPS design, there is testimony and evidence of record that Walmart's BPS was designed by Nanjing and not Walmart.   Further, Walmart's jeans were marketed under the Time and Tru label, which was affixed onto its jeans.  Assessment of such product ID and marketing will require factfinding as regards Walmart's intent.  Thus, this Court cannot determine, as a matter of law, that this *Lapp* factor supports granting summary judgment.

As regards actual confusion, the record contains conflicting testimony and evidence, including experts and surveys.  Resolution of the credibility of such testimony and evidence is best left to the factfinder.  Therefore, the Court cannot find, as a matter of law, that this *Lapp* factor supports granting summary judgment.

As regards marketing through different channels, although both AEO and Walmart market to overlapping consumer demographics, other evidence demonstrates that each product line of jeans is sold in separate stores, and each product is advertised in different circulars and different market channels.   Therefore, issues of fact remain that require a factfinder to determine whether or not AEO and Walmart market through the same channels.  Therefore, the Court cannot find, as a matter of law, that this *Lapp* factor supports granting summary judgment.

11

As regards target markets, the parties have presented evidence that its target customers have different age ranges.  Walmart asserts that its target customers are "moms and grandmas" age 25 to 60 while AEO asserts that it targets a younger customer, ages 15 to 25.  In light of this conflicting evidence on target markets, the Court cannot find that this *Lapp* factor cannot support granting summary judgment.

Therefore, following analysis pursuant to the *Lapp* factors, the Court finds that there are genuine issues of material fact, which requires a factfinder to decide the element of confusion.

Accordingly, AEO's Motion for Summary Judgment, regarding trademark infringement liability, will be denied.

C.  Damages and Injunctive Relief

If AEO were to succeed on liability, it argues that the Lanham Act entitles it to both disgorgement of profits and a permanent injunction.  Specifically, as regards money damages, AEO contends that Walmart should be ordered to disgorge profits from all of its infringing sales. As regards a permanent injunction, AEO maintains that irreparable harm is presumed from trademark infringement; an injunction would protect against future infringement and loss of control over AEO's alleged trademark; the balance of harms favors a permanent injunction; and the public interest favors eliminating the likelihood of confusion.  Walmart contends that, even if infringement exists, the damages should be apportioned, i.e., it should only be liable for profits attributable to the BPS design.   According to its damages expert, Walmart maintains that its BPS drove no more than 0.5 to 1.6% of the sales and profits from its jeans.

Because the Court will not be granting summary judgment on liability, these issues are not ripe, and it need not render any decision on damages or injunctive relief at this stage.

Accordingly, AEO's Motion for Summary Judgment, regarding disgorgement of profits and permanent injunction, will be denied.

ORDER

Following consideration of AEO's Motion for Summary Judgment (ECF No. 73), the respective briefs (ECF Nos. 74, 84, and 89), Concise Statements of Material Facts (ECF Nos. 75 and 85), Appendices (ECF Nos. 76-79, 86), the arguments of counsel, and for the reasons stated in this Court's Opinion, AEO's Motion for Summary Judgment is denied.  Because the Court finds questions of fact unrelated to AEO's exhibits (ECF Nos. 76-32 through 76-50 and 77-1 through 77-32), Walmart's Motion to Strike (ECF No. 87) is denied as moot at this time, without prejudice to the same be being refiled at a later point in the litigation.

A separate order will issue with regard to the filing of a joint status report.

Dated:  July15, 2022.


Marilyn J. Horan
United States District Judge