IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

AMERICAN EAGLE OUTFITTERS, INC.,  )
A DELAWARE CORPORATION; AND       )
RETAIL ROYALTY COMPANY, A          )            2:20-CV-00412-MJH
NEVADA CORPORATION;                )
                                   )
            Plaintiffs,            )
                                   )
      vs.                          )
                                   )

WALMART, INC., A DELAWARE
CORPORATION;

            Defendant,

OPINION AND ORDER

Plaintiffs, American Eagle Outfitters, Inc. and Retail Royalty Company (collectively
"AEO"), bring the within action for False Designation of Origin, and Unfair Competition under
the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade
Practices and Consumer Protection Law (Count II), and Common Law Trademark Infringement,
Unfair Competition, and Misappropriation (Count III) against Defendant, Walmart, Inc. (ECF
No. 1).  Walmart now moves, under *Daubert*, to exclude the testimony of W. Todd
Schoettelkotte regarding lost sales and actual damages. (ECF No. 106).   This matter is now ripe
for consideration.

Following consideration of Walmart's Motion (ECF No. 106), the respective briefs (ECF
Nos. 107, 117, and 124), Declaration (ECF No. 112), the arguments of counsel, and for the
following reasons, Walmart's Motion to exclude the testimony of W. Todd Schoettelkotte
regarding lost sales and actual damages will be granted.

I.      Background

AEO asserts that, in 2003, AEO began using a particular back pocket stitch ("BPS") on its women's denim jeans, pants, shorts, and skirts. (ECF No. 85 ¶ 16, 23).  Said BPS appears as follows:



AEO further asserts that the primary purpose of the BPS logo is to serve as a brand symbol.  *Id*. at ¶ 24.

In 2018, Walmart introduced a line of women's jeans under the private label Time and Tru (the "T&T jeans").  *Id*. at ¶ 87. In summer 2018, Walmart introduced T&T jeans featuring the BPS design as follows:



*Id*.

AEO asserts that Walmart's BPS infringes on its BPS trademark and claims False Designation of Origin and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law

(Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III).

In its defense relative to damages, Walmart maintains that AEO suffered no damages from the alleged infringement and alleges that zero Walmart customers bought Walmart jeans instead of AEO jeans.   In support of its damages claim, AEO has proffered W. Todd Schoettelkotte to opine that 1) AEO is entitled to disgorgement of Walmart's infringing profits, and that 2) AEO experienced at least some lost sales and actual damages.  In its *Daubert* motion, Walmart challenges only Mr. Schoettelkotte's second opinion relative to AEO's alleged lost sales and actual damages.

In support of his opinions, Mr. Schoettelkotte quotes statements and images appearing on Ms. Waldow's social network postings, as well as statements appearing in comments to her postings. Ms. Waldow is a social media influencer who participated in Walmart's Affiliate Program and received a commission from Walmart for Walmart product sales made through a link associated with her social network posting.  In videos produced by AEO, Ms. Waldow promoted a variety of Walmart products including tops, dresses, jackets and sandals, and the accused jeans.  In his report, Mr. Schoettelkotte refers to $25,800 in sales that were generated by Ms. Waldow for Walmart, and a $940 commission that she received as a result of such sales. (ECF No. 112-5 at  ¶ 30).  From this evidence, Mr. Schoettelkotte opines that, as a result, AEO lost "some" sales of jeans to Walmart. (*Id*. at ¶ 31).  Walmart contends that said opinion 1) is not the product of any methodology based upon sufficient facts or data; and 2) would only confuse the trier of fact.

II.     Relevant Standard

Under Federal Rule of Evidence 702, the District Court is to act as a gatekeeper to,

"ensure that any and all expert testimony or evidence is not only relevant, but also reliable."

*United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010).  Federal Rule of Evidence 702 provides

in part that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or

education may testify in the form of an opinion or otherwise if,

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of
> fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data; research;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

 Fed. R. Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Phamaceuticals*, 509 U.S. 579 (1993)

changed the criteria for the admissibility of expert testimony and charged trial courts to act as

"gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Id*. at 592-93.

In *Daubert*, the Supreme Court articulated the following two-prong test for determining the

admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must
> determine at the outset, pursuant to Rule 104(a), whether the expert is proposing
> to testify to (1) scientific knowledge that (2) will assist the trier of fact to
> understand or determine a fact in issue. This entails a preliminary assessment of
> whether the reasoning or methodology underlying the testimony is scientifically
> valid and of whether that reasoning or methodology properly can be applied to the
> facts in issue.

*Id*. at 593-94. Both prongs of the *Daubert* test must be satisfied before the proffered expert

testimony may be admitted. *Id*. at 595. The Third Circuit has explained that Rule 702 "embodies

a trilogy of restrictions" that expert testimony must meet for admissibility: qualification,

reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.

2003). The Third Circuit has explained:

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Id*. at 404. When expert testimony is challenged under Daubert, "the proponents of the expert

must establish admissibility by a preponderance of the evidence." *Bruno v. Bozzuto's*, Inc., 311

F.R.D. 124, 135 (M.D. Pa. 2015).

   III.   Discussion

   Walmart maintains that Mr. Schoettelkotte's opinions, as regards AEO's alleged lost

sales and actual damages, should be excluded because said opinions are not derived from reliable

principles and methods.  Walmart maintains that, upon review of the Mr. Schoettelkotte's report

regarding lost sales and actual damages, Mr. Schoettelkotte relies on no methodology at all.

Instead, Walmart contends that he relies on "mere speculation" that Ms. Waldow's online efforts

"appear" to have caused AEO to lose sales to Walmart and to cause AEO to sustain actual

damages.  Finally, Walmart argues that, as required under Rule 702 and Third Circuit precedent,

Mr. Schoettelkotte's lost sales and actual damage opinion will not assist the trier of fact.

   AEO argues that Mr. Schoettelkotte's opinion is reliable because it is based upon his

review and assessment of the evidence. According to AEO, said evidence includes documents

from Walmart showing that Walmart set its sights on gaining market share at AEO's expense.

AEO maintains that Mr. Schoettelkotte also relied on promotional efforts by social media

influencer Jamie Waldow, who called Walmart's jeans "American Eagle Dupe[s]" and suggested

to her tens of thousands of followers that Walmart's T & T are a better value because they have a

"similar pocket style" and "[e]veryone always thinks they're AE."  AEO also contends that Mr.

Schoettelkotte's opinions on lost sales and actual damages are not speculative just because he does not quantify damages.  As regard this quantification, AEO argues that it and Mr. Schoettelkotte should not be penalized because Walmart failed to keep or produce financial records form which AEO's damages could be quantified.

Expert testimony supported by nothing more than *ipse dixit* statements of the expert is inherently unreliable. *Elcock v. Kmart Corp.*, 233 F.3d 734, 747 (3d Cir. 2000). When the expert's testimony relies on his or her subjective beliefs or unsupported assertions, there is no methodology for the Court to assess, and thus the testimony is unreliable, and such testimony must be excluded. *Whyte v. Stanley Black & Decker, Inc.*, 514 F. Supp. 3d 684, 694-95 (W.D. Pa. 2021). Finally, to be reliable, an expert's opinion must be supported by sufficient facts. *ZF Meritor, L.L.C. v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012). "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Dorshimer v. Zonar Sys., Inc.*, No. 3:13-0553, 2016 U.S. Dist. LEXIS 103867, at *10-11 (M.D. Pa. Aug. 8, 2016), quoting *Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

Here, Mr. Schoettelkotte's report states: "I have been retained on behalf of AEO **as an expert to calculate damages** resulting from Walmart's alleged infringement."  (ECF No. 112-5 at ¶ 2).   At its core, Mr. Schoettelkotte's opinion regarding lost sales and actual damages must "be relevant for the purposes of the case and must assist the trier of fact." *See supra*, *Schneider*, 320 F.3d at 404.  As regards lost sales and actual damages, Mr. Schoettelkotte's does not perform his purported purpose as an expert, to "calculate damages."  Rather, his proffered opinions, as regards lost sales and actual damages, are couched in subjective and speculative

language.  Mr. Schoettelkotte asserts that Ms. Waldow's efforts appears to have caused AEO to

lose "some" unspecified amount of jean sales to Walmart, which caused AEO some unquantified

amount of actual damages.  Specifically, he states:

> Ms. Waldow's display and promotion of Walmart's Time & Tru jeans, including her comparison of Time & Tru jeans to AEO jeans, appears to have enabled Walmart to gain at **least some sales** at AEO's expense, resulting in lost sales and actual damage to AEO. This actual damage is in addition to Walmart being unjustly enriched by using the Infringing Design to attract customers.

 (ECF No. 112-5 at ¶ 31).  In his opinion, Mr. Schoettelkotte does not quantify at "least some

sales."  The jury is then left to impermissibly speculate as to what Mr. Schoettelkotte means by

AEO's alleged lost sales.  In the least, the jury would need a methodology and raw data by which

to calculate lost sales and actual damages.  From the evidence from Ms. Waldow's social media

posts, Mr. Schoettelkotte infers that it appears that some customers bought Walmart jeans instead

of AEO jeans, which would result in a presumed sales loss for AEO.  However, said inference

does not require Mr. Schoettelkotte's purported expertise, especially as he has been only tasked

with damage calculation.  And while AEO suggests that the facts and data to support lost sales

are missing due to no fault of its own, that issue is not germane to a *Daubert* analysis of Mr.

Schoettelkotte's opinions as they lay before the Court.   AEO has not demonstrated, per its

burden, that Mr. Schoettelkotte's opinions, as regard lost sales and actual damages, are supported

by a reliable methodology and sufficient facts and data.

Accordingly, Walmart's Daubert Motion to Exclude the testimony of W. Todd

Schoettelkotte on lost sales and actual damages will be granted.

## ORDER

Following consideration of Walmart's Motion (ECF No. 106), the respective briefs (ECF

Nos. 107, 117, and 124), Declaration (ECF No. 112), the arguments of counsel, and for the

foregoing reasons, Walmart's Motion to exclude the testimony of W. Todd Schoettelkotte regarding lost sales and actual damages is granted.

Dated: February 6, 2023.

Marilyn J. Horan
United States District Judge