IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| AMERICAN EAGLE OUTFITTERS, INC., A DELAWARE CORPORATION; AND RETAIL ROYALTY COMPANY, A NEVADA CORPORATION;<br><br>Plaintiffs,<br><br>vs.<br><br>WALMART, INC., A DELAWARE CORPORATION;<br><br>Defendant, | 2:20-CV-00412-MJH |

OPINION AND ORDER

Plaintiffs, American Eagle Outfitters, Inc. and Retail Royalty Company (collectively "AEO"), bring the within action for False Designation of Origin, and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III) against Defendant, Walmart, Inc. (ECF No. 1).  Walmart now moves, under *Daubert*, to exclude the testimony of Amanda Starling. (ECF No. 108).   This matter is now ripe for consideration.

Following consideration of Walmart's Motion (ECF No. 108), the respective briefs (ECF Nos. 109, 118, and 125), Declaration (ECF No. 112), the arguments of counsel, and for the following reasons, Walmart's Motion to exclude the testimony of Amanda Starling will be denied.

I.   Background

AEO asserts that, in 2003, AEO began using a particular back pocket stitch ("BPS") on its women's denim jeans, pants, shorts, and skirts. (ECF No. 85 ¶ 16, 23).  Said BPS appears as follows:



AEO further asserts that the primary purpose of the BPS logo is to serve as a brand symbol.  *Id*. at ¶ 24.

In 2018, Walmart introduced a line of women's jeans under the private label Time and Tru (the "T&T jeans").  *Id*. at ¶ 87. In summer 2018, Walmart introduced T&T jeans featuring the BPS design as follows:



*Id*.

AEO asserts that Walmart's BPS infringes on its BPS trademark and claims False Designation of Origin and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law

(Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III).

AEO has proffered Amanda Starling as an expert in the denim industry. In her report she opines, in relevant part, as follows:

- Walmart's BPS design is "strikingly similar" to AEO's BPS design;
- AEO's BPS design is distinctive and strong;
- Walmart's BPS design was copied from AEO and that Walmart knew or should have known that its BPS design resembled AEO's BPS design; and
- Walmart benefitted from its BPS design.

(ECF No. 112-1 at pp. 17, 22, 25, 31, 53, 59).

In its *Daubert* Motion, Walmart argues Ms. Starling's opinions must be precluded in its entirety because her opinions 1) are not based on sufficient facts or data, 2) are not the product of reliable scientific principles, and 3) are her own subjective beliefs or speculation. Therefore, Walmart maintains that Ms. Starling's opinions would not assist the trier of fact.

II. Relevant Standards

A. *Lapp* Factors

AEO's trademark infringement claim hinges, in part, on establishing that Walmart's "use of the mark (its BPS) to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). In the Third Circuit, the factors laid out in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983) present a framework to determine whether a likelihood of confusion exists. These *Lapp* factors are:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a

3

>purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

721 F.2d 460, 463 (3d Cir. 1983). "The *Lapp* factors are best understood as 'tools to guide a qualitative decision.' None of them in itself is determinative and each must be 'weighed and balanced' based on the particular facts of the case." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 320 (3d Cir. 2015) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004)).

Ms. Starling's proffered opinions, which address some of the *Lapp* factors, are challenged by Walmart under Federal Rule of Evidence 702 and *Daubert*.

### B.  Fed. R. Evid. 702 and *Daubert*

Under Federal Rule of Evidence 702, the District Court is to act as a gatekeeper to, "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). Federal Rule of Evidence 702 provides in part that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if,

>(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>(b) the testimony is based on sufficient facts or data; research;
>
>(c) the testimony is the product of reliable principles and methods; and
>
>(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

4

The Supreme Court in *Daubert v. Merrell Dow Phamaceuticals*, 509 U.S. 579 (1993) changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Id*. at 592-93. In *Daubert*, the Supreme Court articulated the following two-prong test for determining the admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id*. at 593-94. Both prongs of the *Daubert* test must be satisfied before the proffered expert scientific testimony may be admitted. *Id*. at 595. The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has explained:

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Id*. at 404. When expert testimony is challenged under *Daubert*, "the proponents of the expert must establish admissibility by a preponderance of the evidence." *Bruno v. Bozzuto's*, Inc., 311 F.R.D. 124, 135 (M.D. Pa. 2015).

III.  Discussion

   A.  Opinions on Mark Similarity

Walmart first argues that Ms. Starling's opinions regarding the similarity of marks are her subjective belief based upon her plain observation and that she does not rely on sufficient facts or

5

data rendering this opinion. Walmart further maintains that Ms. Starling relies upon her subjective beliefs formed from her plain observations of the two BPS designs. Ms. Starling testified, "just looking at the two comparisons, I believe [the Walmart and AEO BPS designs] are very very similar." (ECF No. 112-2 at p. 75).  AEO responds that Ms. Starling is qualified to opine on the similarity between the parties' BPS logs from the perspective of a skilled denim branding expert and educator.

Mark similarity may be the most important factor. *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 281 (3d Cir 2001). Marks are confusingly similar "if ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship." *Sabinsa Corp. v. Creative Compounds, LLC,* 609 F.3d 175, 183 (3d Cir. 2010). Instead of a "[s]ide-by-side comparison of the two marks," factfinders must "move into the mind of the roving consumer" and evaluate the "overall impression of the marks." *A & H Sportswear*, 237 F.3d at 216. To do so, factfinders "must compare the appearance, sound and meaning of the marks," to determine whether an "average consumer" would confuse or associate the two. *Checkpoint Sys.*, 269 F.3d at 281. With these principles in mind, it has been observed that, in evaluating mark similarity, "[e]xpert assistance is not required to see such plain observation."  *Int'l Mkt. Brands v. Martin Int'l Corp.*, 882 F.Supp.2d 809, 816 (W.D. Pa. 2012).  However, it has also been observed that, "[u]nder *Daubert*, the cornerstone for admissibility is assistance to the trier of fact." *See Larson v. Kempker*, 414 F.3d 936, 940–41 (8th Cir. 2005).

Further in terms of expert reliability, the Supreme Court has held, "there are many different kinds of experts, and many different kinds of expertise." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). "[I]n cases not involving scientific testimony, '[t]he

factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Betterbox Commcns. Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002)(quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "In such cases...'the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id*. (quoting *Kumho Tire*, 526 U.S. at 150).

Here, the *Lapp* factor of "mark similarity" will ultimately be decided by the factfinders through their lens, and while Ms. Starling cannot substitute for the factfinder on "mark similarity," she may still provide relevant testimony regarding mark similarity that would assist the trier of fact.  Ms. Starling's proffered report reveals her experience and specialized knowledge in the field of denim and denim marketing.  In drawing on this experience and knowledge, Ms. Starling's report also explains the nuances of the stitching in the AEO BPS and Walmart BPS.  (ECF No. 112-1 at ¶¶ 33-36).  AEO also asserts, that contrary to Walmart's position, Ms. Starling is not offering an opinion on the ultimate legal issue of likelihood of confusion under the *Lapp* factors.  Thus, Ms. Starling's personal observation in combination with her industry knowledge and experience of the AEO BPS and Walmart BPS can help educate the jurors on industry designs and standards and ultimately assist the jurors in their analysis of mark similarity.

Accordingly, Walmart's *Daubert* Motion, as regards Ms. Starling's opinion on "mark similarity," will be denied.

B.  Opinions On the Strength Of AEO's BPS Design

Walmart next contends that Ms. Starling's opinions on the strength of AEO's BPS design are not based on sufficient facts and are not the product of reliable scientific principles.

According to Walmart, Ms. Starling admits that she did not conduct any studies on the identifiability of AEO's BPS design. In support of her opinion that "consumers do in fact focus on AEO's back pocket with the BPS logo," she relies on an "eye-tracking technology" study that was "conducted for AEO."  AEO contends that Ms. Starling offers a reliable and relevant opinion that AEO's decades of focused advertising and promotion has made its BPS logo "strong."

Under the second *Lapp* factor, the strength of a mark is determined by (1) the distinctiveness or conceptual strength of the mark and (2) its commercial strength or marketplace recognition. *Checkpoint*, 269 F.3d at 282.  Courts have permitted experts to opine on mark strength. For example, in *Int'l Mkt. Brands v. Martin Int'l Corp.*, 882 F.Supp.2d 809 (W.D. Pa. 2012), the court explained that, even where an expert's opinion about mark strength includes "common sense matters of fact" and those facts are contextualized within a relatively unknown measurement system used to determine the conceptual and acquired strengths of a trademark, such testimony is permitted because it does not provide an ultimate conclusion on likelihood of confusion. *Id*. at 816.  Therefore, such expert opinion is permitted in relation to the *Lapp* factor of mark strength, as it may assist a trier of fact and satisfies the helpfulness standard of Rule 702. *Id*. at 816-817.

Here, Ms. Starling's opinion on mark strength, as for mark similarity, does not fall squarely within scientific expertise.  Thus, Ms. Starling's opinion is more properly assessed upon her personal experience and knowledge of the denim fashion industry and ultimately whether that can assist the trier of fact.   Based upon her experience and knowledge, Ms. Starling considered the general industry use of distinct BPS designs, the length of AEO's use and promotion of is BPS design, its status as a leading brand of women's jeans, and consumer

reaction to Walmart's BPS. Such opinions, as to AEO's mark strength, present sufficient bases of reliability and admissibility to assist the trier of fact. Despite Walmart's contentions, assessment of mark strength is not necessarily dependent upon any consumer study as the crux of Ms. Startling's opinions, which are based upon industry experience and context.

Accordingly, Walmart's *Daubert* Motion, as regards Ms. Starling's opinion on "mark strength," will be denied.

C. Opinions on Walmart's Intent in Adopting the BPS Mark

Walmart next contends that Ms. Starling is not qualified to testify on Walmart's intent in adopting its BPS mark, because Ms. Starling admitted that she never observed a single piece of correspondence, instruction, or directive involving Walmart or Nanjing, Walmart's jean supplier, that instructed anyone to copy AEO's BPS design. AEO argues that Ms. Starling does not opine as to Walmart and Nanjing's witnesses' subjective intent; but rather, Ms. Starling's opinions rebut Walmart's claims that any BPS similarity occurred by coincidence or accident.

Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation; however, such evidence weighs heavily in favor of finding a likelihood of confusion. *See Checkpoint Sys.,* 269 F.3d at 286. In evaluating this factor, courts must consider whether the defendant chose the mark to intentionally confuse consumers, and thereby capitalize on the senior user's goodwill, and whether the defendant gave adequate care to investigating its proposed mark. *See Kos.,* 369 F.3d at 721. "[A] defendant's mere intent to copy, without more, is not sufficiently probative of the defendant's *success* in causing confusion to weigh such a finding in the plaintiff's favor; rather, defendant's intent will indicate a likelihood of confusion only if an intent to *confuse* consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's." *A & H Sportswear,* 237 F.3d at 225–26.

9

Here, Ms. Starling's opinions regarding Walmart's intent are supported by the cumulative evidence that she analyzed, including correspondence that Walmart wanted to "go after American Eagle;" her analysis of Walmart's early development of the accused jeans; the short time over which the BPS logo was developed; and testimony from the designer who had "manipulated" other BPS logos.  Again, as with the other *Lapp* factors, Ms. Starling does not substitute for the factfinders' judgment as to Walmart's intent or state of mind, and she is qualified to educate the jury on the industry processes regarding brand development, design, and marketing.  Such information could assist the jury to reach its conclusion about Walmart's intent in adopting the BPS mark.

Accordingly, Walmart's *Daubert* Motion, as regards Ms. Starling's opinion on Walmart's intent, will be denied.

D.  Benefit from BPS Design

Finally, Walmart maintains that Ms. Starling's opinions that Walmart benefitted from its BPS Design is speculative.  Specifically, Walmart asserts that Ms. Starling speculates that "it is likely that the WM BPS appeared familiar and desirable to many shoppers because it resembles AEO's BPS logo."  She also opines that, "seeing a familiar BPS design on the WM jeans increased the likelihood of a shopper buying those jeans and gave WM a marketing advantage."  AEO argues that Ms. Starling provides relevant opinions regarding the harm done by Walmart's BPS.

The Third Circuit has recognized "when parties target their sales efforts to the same consumers, there is a stronger likelihood of confusion."  *Lapp,* 721 F.2d at 463–64.

Here, Ms. Starting provides opinions relevant to Walmart's efforts to benefit from its BPS design.  Again, she renders her opinions based upon her industry experience and knowledge

10

and not to pinpoint an exact quantitative benefit. She specifically opines about the industry and the importance of BPS as a marketing and selling tool, the methods Walmart undertook to parrot the AEO BPS, and specific strategies allegedly utilized by Walmart to create a nexus between the brands. Such evidence, as extrapolated by Ms. Starling and in conjunction with her industry knowledge and experience, could assist the jury in drawing inferences about whether Walmart sought to benefit from its specific use of the subject BPS in relation to AEO's BPS.

Accordingly, Walmart's *Daubert* Motion, as regards Ms. Starling's opinion about Walmart's benefit from the use of its BPS, will be denied.

ORDER

Following consideration of Walmart's Motion (ECF No. 108), the respective briefs (ECF Nos. 109, 118, and 125), Declaration (ECF No. 112), the arguments of counsel, and for the foregoing reasons, Walmart's Motion to exclude the testimony of Amanda Starling is denied.

Dated: February 6, 2023.

_____
Marilyn J. Horan
United States District Judge