IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| AMERICAN EAGLE OUTFITTERS, INC., A DELAWARE CORPORATION; AND RETAIL ROYALTY COMPANY, A NEVADA CORPORATION;<br><br>Plaintiffs,<br><br>vs.<br><br>WALMART, INC., A DELAWARE CORPORATION;<br><br>Defendant, | 2:20-CV-00412-MJH |

OPINION AND ORDER

Plaintiffs, American Eagle Outfitters, Inc. and Retail Royalty Company (collectively "AEO"), bring the within action for False Designation of Origin, and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III) against Defendant, Walmart, Inc. (ECF No. 1). Walmart now moves, under *Daubert*, to exclude the testimony of Lynn Downey. (ECF No. 110). This matter is now ripe for consideration.

Following consideration of Walmart's Motion (ECF No. 110), the respective briefs (ECF Nos. 111, 119, and 126), Declaration (ECF No. 112), the arguments of counsel, and for the following reasons, Walmart's Motion to exclude the testimony of Lynn Downey will be denied.

I.  Background

AEO asserts that, in 2003, AEO began using a particular back pocket stitch ("BPS") on its women's denim jeans, pants, shorts, and skirts. (ECF No. 85 ¶ 16, 23). Said BPS appears as follows:



AEO further asserts that the primary purpose of the BPS logo is to serve as a brand symbol. *Id*. at ¶ 24.

In 2018, Walmart introduced a line of women's jeans under the private label Time and Tru (the "T&T jeans"). *Id*. at ¶ 87. In summer 2018, Walmart introduced T&T jeans featuring the BPS design as follows:



*Id*.

AEO asserts that Walmart's BPS infringes on its BPS trademark and claims False Designation of Origin and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III).

AEO has proffered Lynn Downey, the former archivist and historian for the Levi Strauss & Co., as an expert in the use of BPS logos by leading brands of jeans. In her report she opines, in relevant part, as follows:

- BPS logos on jeans are brand symbols that inform consumers that all garments bearing that symbol come from a single producer, allowing consumers to differentiate between brands;
- AEO continues the tradition of using a BPS logo as a permanent, visible brand symbol;
- AEO's BPS logo has acquired commercial strength through long use, extensive promotion, and massive sales over nearly two decades; and
- Walmart employees who developed Walmart's accused jeans knew or should have know that AEO's BPS logo is a trademark.

(ECF No. 112-3).

In its *Daubert* Motion, Walmart argues Ms. Downey's opinions must be precluded in its entirety because 1) she is not qualified to render opinions on validity and strength of AEO's BPS as a trademark; 2) her opinions are not the product of any methodology based upon sufficient facts or data; and 3) her opinions on Walmart's state of mind exceed the scope of proper expert testimony.

II.   Relevant Standards

Under Federal Rule of Evidence 702, the District Court is to act as a gatekeeper to, "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). Federal Rule of Evidence 702 provides

in part that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if,

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data; research;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Phamaceuticals*, 509 U.S. 579 (1993) changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Id*. at 592-93. In *Daubert*, the Supreme Court articulated the following two-prong test for determining the admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id*. at 593-94. Both prongs of the *Daubert* test must be satisfied before the proffered expert scientific testimony may be admitted. *Id*. at 595. The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has explained:

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

4

*Id*. at 404. When expert testimony is challenged under *Daubert*, "the proponents of the expert must establish admissibility by a preponderance of the evidence." *Bruno v. Bozzuto's*, Inc., 311 F.R.D. 124, 135 (M.D. Pa. 2015).

III.   Discussion

A.   Ms. Downey's Qualifications on Strength of AEO's BPS as a Trademark

Walmart first argues that Ms. Downey is not qualified to offer opinions on the strength of AEO's BPS design because she is not an expert on this topic. Specifically, Walmart contends that Ms. Downey has testified as to her expertise in the history of Levi's denim and blue jeans and its BPS, but said expertise does not extend to AEO's BPS and understanding of its use, consumer attitudes, and opinions toward it. AEO maintains that Ms. Downey holds specialized knowledge and experience about trademark significance and strength of BPS logos and can offer a unique experience as someone with decades of experience in studying the historical significance of BPS logos as branding. Walmart counters that Ms. Downey is not holding herself as an expert in the denim industry who can speak to other brands like AEO.

An expert witness must "possess specialized expertise," with "a broad range of knowledge, skills, and training qualify[ing] an expert." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

Here, Ms. Downey has demonstrated through her report and testimony that she has specialized expertise in the area of BPS as it relates to her experience as an archivist and historian with Levi's. Ms. Downey understanding of BPS brand strength derives from her particular study and experience with the Levi's brand, and because of that knowledge, skills, and experience, she is qualified as to general significance of BPS to jean retailers. Any apparent deficiency is Ms. Downey's specific knowledge and experience with other brands does not per se

5

disqualify her from examining AEO's BPS and testifying as to BPS significance and potential strength in the market based upon her own experiences with Levi's BPS.

Accordingly, Walmart's *Daubert* Motion, as regards Ms. Downey's qualifications to opine on BPS strength, will be denied.

B.  Ms. Downey's Methodology

Walmart next contends that Ms. Downey's opinions are not based on sufficient facts and are not the product of reliable principles and methods. According to Walmart, Ms. Downey admits that she did not conduct any independent study in forming her opinions. Further, Walmart maintains that Ms. Downey did not rely upon her own specialized knowledge to assist the trier of fact. In response, AEO contends that Ms. Downey did not need to conduct her own "independent study" to satisfy the *Daubert* standard. AEO further argues that Ms. Downey relied upon deposition testimony and assumed the truth of the facts set forth in the pleadings, as permitted under the rules of evidence.

In terms of expert reliability, the Supreme Court has held, "there are many different kinds of experts, and many different kinds of expertise." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). "[I]n cases not involving scientific testimony, '[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Betterbox Commcns. Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002)(quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "In such cases…'the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id*. (quoting *Kumho Tire*, 526 U.S. at 150).

Here, opinion on the strength of AEO's BPS does not fall squarely within scientific expertise and depending on the context of an expert's proffered opinion, does not require any

6

particular methodology. Thus, Ms. Downey's opinion is more properly assessed upon her personal and professional experience and knowledge of BPS designs and their significance, and ultimately whether that can assist the trier of fact. Based upon her experience and knowledge, Ms. Downey has the requisite background as someone who understands the significance of the BPS in the industry and what impact the BPS can have on the consumer based upon her professional experience at Levi's.

Accordingly, Walmart's *Daubert* Motion, as regards Ms. Downey's methodology, will be denied.

### C. Opinions on Walmart's State of Mind

Walmart next contends that Ms. Downey is not qualified to testify on Walmart's state of mind. AEO argues that Ms. Downey does not opine as to Walmart and Nanjing's witnesses' subjective intent; but rather, Ms. Downey's opinions are based upon her decades of experience in the denim industry and her interactions with Walmart executives on this issue.

Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation; however, such evidence weighs heavily in favor of finding a likelihood of confusion. *See Checkpoint Sys.,* 269 F.3d at 286. In evaluating this factor, courts must consider whether the defendant chose the mark to intentionally confuse consumers, and thereby capitalize on the senior user's goodwill, and whether the defendant gave adequate care to investigating its proposed mark. *See Kos.,* 369 F.3d at 721. "[A] defendant's mere intent to copy, without more, is not sufficiently probative of the defendant's *success* in causing confusion to weigh such a finding in the plaintiff's favor; rather, defendant's intent will indicate a likelihood of confusion only if an intent to *confuse* consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's." *A & H Sportswear,* 237 F.3d at 225–26.

7

Here, Ms. Downey's opinions regarding Walmart's intent are supported by the cumulative evidence that she analyzed, including testimony regarding the trademark significance of BPS logos as understood by Walmart and her own interactions with Walmart executives. Ms. Downey does not substitute for the factfinders' judgment as to Walmart's state of mind, and she is qualified to educate the jury on BPS vis-à-vis its significance to a brand's development, design, and marketing.  Such information could assist the jury to reach its conclusion about Walmart's state of mind in its development of the subject BPS.

Accordingly, Walmart's *Daubert* Motion, as regards Ms. Downey's opinion on Walmart's state of mind, will be denied.

### ORDER

Following consideration of Walmart's Motion (ECF No. 110), the respective briefs (ECF Nos. 111, 119, and 126), Declaration (ECF No. 112), the arguments of counsel, and for the foregoing reasons, Walmart's Motion to exclude the testimony of Lynn Downey is denied.

Dated:  February 6, 2023.

_____
Marilyn J. Horan
United States District Judge