IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| AMERICAN EAGLE OUTFITTERS, INC., A DELAWARE CORPORATION; AND RETAIL ROYALTY COMPANY, A NEVADA CORPORATION; | ) ) ) ) ) | 2:20-CV-00412-MJH |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| WALMART, INC., A DELAWARE CORPORATION; | | |
| Defendant, | | |

OPINION AND ORDER

Plaintiffs, American Eagle Outfitters, Inc. and Retail Royalty Company (collectively "AEO"), bring the within action for False Designation of Origin, and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III) against Defendant, Walmart, Inc. (ECF No. 1).   AEO now moves, under *Daubert*, to exclude the testimony of Abel Teshome. (ECF No. 113).   This matter is now ripe for consideration.

Following consideration of AEO's Motion (ECF No. 113), the respective briefs (ECF Nos. 114, 120, and 123), Declaration (ECF No. 121), the arguments of counsel, and for the following reasons, AEO's Motion to exclude the testimony of Abel Teshome will be granted.

I.     Background

AEO asserts that, in 2003, AEO began using a particular back pocket stitch ("BPS") on its women's denim jeans, pants, shorts, and skirts. (ECF No. 85 ¶ 16, 23).   Said BPS appears as follows:



AEO further asserts that the primary purpose of the BPS logo is to serve as a brand symbol. *Id*. at ¶ 24.

In 2018, Walmart introduced a line of women's jeans under the private label Time and Tru (the "T&T jeans"). *Id*. at ¶ 87. In summer 2018, Walmart introduced T&T jeans featuring the BPS design as follows:



*Id*.

AEO asserts that Walmart's BPS infringes on its BPS trademark and claims False Designation of Origin and Unfair Competition under the Lanham Act (Count I), Unlawful Acts or Practices Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), and Common Law Trademark Infringement, Unfair Competition, and Misappropriation (Count III).

Walmart has proffered Abel Teshome as a disgorgement of profit expert if Walmart is found liable of infringing AEO's BPS logo. Should it prevail on liability under the Lanham Act,

AEO seeks to recover disgorgement of Walmart's profits arising from the alleged wrongful conduct.   Mr. Teshome has opined as to his assessment of the portion of the accused BPS's profits that can be attributed to the alleged wrongful conduct. He based his opinion upon the following:  1) factors that contribute to customer purchase decisions; 2) influence of AEO stitch design on customer purchase decisions; and 3) cross-purchasing between AEO jean shoppers and Walmart jean shoppers.  Mr. Teshome concludes that, after review of said factors, an apportionment factor of between 0.5% and 1.6% from the gross profits of the accused Walmart jeans is appropriate.

In its *Daubert* motion, AEO seeks to exclude Mr. Teshome's report and testimony on the basis that 1) Mr. Teshome's apportionment analysis is irrelevant under the Lanham Act; 2) Mr. Teshome is not an expert in marketing or consumer behaviors; and 3) Mr. Teshome's "Cross-Purchasing" theory has no basis in science or law.

II.      Relevant Standard

Under Federal Rule of Evidence 702, the District Court is to act as a gatekeeper to, "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010).  Federal Rule of Evidence 702 provides in part that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if,

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data; research;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Phamaceuticals*, 509 U.S. 579 (1993) changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Id*. at 592-93. In *Daubert*, the Supreme Court articulated the following two-prong test for determining the admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id*. at 593-94. Both prongs of the *Daubert* test must be satisfied before the proffered expert scientific testimony may be admitted. *Id*. at 595. The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has explained:

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Id*. at 404. When expert testimony is challenged under *Daubert*, "the proponents of the expert must establish admissibility by a preponderance of the evidence." *Bruno v. Bozzuto's*, Inc., 311 F.R.D. 124, 135 (M.D. Pa. 2015).

III.    Discussion

AEO arguments, under Rule 702 and *Daubert*, fall into categories of relevance, qualifications, and reliability and fit.

4

A.  Relevance

AEO contends that Mr. Teshome's apportionment analysis is irrelevant under the

Lanham Act, because he has inaccurately inferred an apportionment provision into the statute.

Walmart argues that Mr. Teshome's apportionment analysis is relevant, because his report

clearly articulates his understanding that "profit disgorgement damages under the Lanham Act

are equitable measures of monetary relief over which the Court has substantial discretion." (ECF

No. 113-4 at ¶ 36).   Walmart further maintains that AEO is not entitled to Walmart's profits that

are not demonstrably attributable to the unlawful use of AEO's mark.  AEO responds that, unlike

the Copyright Act, the Lanham Act does not limit disgorgement of profits attributable to the

infringing mark.

For violations of trademark infringement, the Lanham Act provides for recovery as

follows:

**(a) Profits; damages and costs; attorney fees**

When a violation of any right of the registrant of a mark registered in the Patent
and Trademark Office, a violation under section 1125(a) or (d)[1] of this title, or a
willful violation under section 1125(c) of this title, shall have been established in
any civil action arising under this chapter, the plaintiff shall be entitled, subject to
the provisions of sections 1111 and 1114 of this title, and subject to the principles
of equity, to recover (1) defendant's profits, (2) any damages sustained by the
plaintiff, and (3) the costs of the action. The court shall assess such profits and
damages or cause the same to be assessed under its direction. In assessing profits
the plaintiff shall be required to prove defendant's sales only; defendant must
prove all elements of cost or deduction.  In assessing damages the court may enter
judgment, according to the circumstances of the case, for any sum above the
amount found as actual damages, not exceeding three times such amount. If the
court shall find that the amount of the recovery based on profits is either
inadequate or excessive the court may in its discretion enter judgment for such
sum as the court shall find to be just, according to the circumstances of the case.
Such sum in either of the above circumstances shall constitute compensation and
not a penalty. The court in exceptional cases may award reasonable attorney fees
to the prevailing party.

---

[1] Section 1125 covers unregistered trademarks.

15 U.S.C.A. § 1117(a).  Thus, regarding profit disgorgement, the plaintiff's only burden is to prove the infringer's revenues, and the infringer bears the burden of proving "all elements of cost or deduction." 15 U.S.C. § 1117(a). The infringer has the burden to "isolate the profits which are attributable to the use of the infringing mark." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07, 62 S. Ct. 1022, 86 L. Ed. 1381.

Disgorgement of a defendant's profits in a Lanham Act trademark infringement case is equitable in nature and does not carry with it a right to a jury trial under the Seventh Amendment.  *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343 (11th Cir. 2019); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075(9th Cir. 2015) (determining there is no Seventh Amendment right to have a jury calculate profits because "[a] claim for disgorgement of profits under § 1117(a) is equitable, not legal."); *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991). A jury may, however, make determinations that may be helpful in evaluating the equitable factors, such as willfulness, direct competition, and likelihood of confusion.  *Keurig, Inc. v. Sturm Foods*, Inc., No. 10-841-SLR-MPT, 2013 U.S. Dist. LEXIS 22484, at *2 n.2 (D. Del. Feb. 19, 2013).

Here, the Court can reduce the relevancy argument to whether or not the jury should hear Mr. Teshome's testimony as regards his calculations for disgorgement of profits.  Based upon the case law cited above, should the issue of disgorgement of profits become ripe, the determination of such will be for the Court and not the jury.  While the jury may inform as to whether or not disgorgement is appropriate, it will not be tasked with calculating or determining any such recovery.  Because Mr. Teshome does not provide expertise in the areas of "willfulness, direct

competition, and likelihood of confusion," his testimony would not be relevant for the jury.  To that extent, AEO's motion will be granted.

The Court will now turn to the relevancy of Mr. Teshome's testimony in relation to the Court's potential determination of disgorgement of profits.  While it may be true that the Lanham Act does not mention apportionment of profits or impose any burden upon the defendant to present an apportionment analysis, district courts continue to rely upon *Mishawaka* to support that the Lanham Act permits infringing defendants to present evidence that some of the profits were unattributed to any unlawful use of the trademark.   To this end, Mr. Teshome's apportionment analysis could be relevant for the Court's consideration of deductions under the Lanham Act.  Therefore, as regards the relevance of Mr. Teshome's testimony to this Court's potential equitable determinations, vis-à-vis disgorgement of profits, AEO's motion would be denied, but for the following analysis of Mr. Teshome's qualifications and the reliability and fit of his opinions under a *Daubert* analysis.

B.  Qualifications

AEO next argues that Mr. Teshome, an accountant, is not qualified as an expert in marketing or consumer behavior research, and thus, his report contains inadmissible opinions about the same.   AEO maintains that Mr. Teshome's opinions travel beyond interpretation of sales records and other accounting documents, and that his apportionment theory rests entirely upon his interpretation of the apparel-industry, marketing research, consumer behavior and surveys conducted by AEO plus apparel industry data from NPD.   Walmart contends that Mr. Teshome's reliance upon AEO's consumer behavior surveys and AEO's and/or NPD's apparel industry data is proper and consistent with the generally accepted practices of his peers who quantify damages in IP infringement litigation.

Here, Mr. Teshome, in his role as an expert accountant, lacks any foundational familiarity with the denim or apparel industry.  While there may be some instances where Mr. Teshome can rely upon certain data and surveys, in this case, his market analysis and cross-purchasing opinions rely upon his interpretation of such data and surveys as foundations for his calculations to support his opinions.  Mr. Teshome's opinions stretch beyond the extrapolation of objective data, and he enters into a realm of industry expertise that he does not possess.  An expert witness must "possess specialized expertise," with "a broad range of knowledge, skills, and training qualify[ing] an expert." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) "[E]xperts who use data in their reports without independently verifying the accuracy or reliability of those figures fail to satisfy this Circuit's reliability requirement. That independent verification is particularly important where, as here, the contested experts lack familiarity with the pertinent industry." *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 138 (M.D. Pa. 2015).  Thus, Mr. Teshome lacks sufficient expertise to render the industry-specific opinions within his report.

Accordingly, AEO's Daubert Motion to Exclude the testimony and report of Abel Teshome, on the basis of qualifications, will be granted.

C.  Reliability and Fit

Finally, AEO contends that Mr. Teshome's "cross-purchasing" theory has no basis in science or law, because of the "absurd" conclusion that Walmart should keep upwards of 99.5% of its profits if found liable for infringement.  Specifically, AEO maintains that Mr. Teshome's cross-purchasing analysis conflates infringement liability with infringement damages. Walmart maintains that Mr. Teshome is not espousing a cross-purchasing theory; but rather, he is using cross-purchasing as data points for his disgorgement of profits apportionment analysis and opinions. AEO also argues that Mr. Teshome's opinions fail to apply cross-purchasing studies or

8

data which involve Walmart and AEO customers.  Rather, Mr. Teshome applies NPD cross-purchasing survey results for Target customers and AEO, using such as a proxy to reach his conclusions about the extent of cross-purchasing by Walmart customers and AEO.   AEO also maintains that Mr. Teshome relies upon cherry-picked data points from AEO's February 2018 internal market research survey about AEO's BPS.  AEO also notes that said 2018 AEO/Target survey predated Walmart's introduction of the infringing BPS jeans into the retail market. Further, AEO argues that Mr. Teshome's analysis and opinions do not reference or contain any direct data from any survey or study about Walmart's infringing jeans or customers.

The burden of proving reliability lies on the party offering an expert's testimony, who must prove reliability by a preponderance of the evidence. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000). Courts in this Circuit look to eight non-exclusive factors in determining reliability: (i) whether a method consists of a testable hypothesis; (ii) whether the method has been subject to peer review; (iii) the known or potential rate of error; (iv) the existence and maintenance of standards controlling the technique's operation; (v) whether the method is generally accepted; (vi) the relationship of the technique to methods which have been established to be reliable; (vii) the qualifications of the expert witness testifying based on the methodology; and (viii) the non-judicial uses to which the method has been put. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994). An expert's testimony must "assist the trier of fact." *Karlo v. Pitt. Glass Works, L.L.C.*, 849 F.3d 61, 80 (3d Cir. 2017).

Here, as regards reliability, Walmart has not demonstrated Mr. Teshome's cross-purchasing method of profit disgorgement can withstand the rigors of the *Paoli II* factors. Instead, Mr. Teshome's cross-purchasing method appears cut from whole cloth and begins to

unstitch when assessed under *Paoli II* reliability factors.  First, Mr. Teshome's cross-purchasing methodology does not consist of a testable hypothesis or established reliable method because it relies on a BPS marketing survey that predated Walmart's introduction of its T&T BPS.   Said survey therefore did not consider the existence of Walmart's potential infringing BPS or its impact upon the denim jean marketplace.  Mr. Teshome's analysis and cross-purchasing methodology does not employ any subsequent market survey that factors in consumer response to Walmart's infringing BPS, or how Walmart's profits may have been affected by the same. Second, Mr. Teshome's application of his cross-purchasing method, using the Target and AEO survey, assumes the same customer characteristics exists as to Walmart.  Mr. Teshome does not address potential incongruencies between Target and Walmart customers in relation to AEO. Without a reliable comparison, Mr. Teshome's report lacks a consistent testable hypothesis method that could be repeated in other contexts and be controlled for error.  Third, it is Walmart's burden to establish that Mr. Teshome's method, wherein he utilized outdated surveys and untested retail proxies for Walmart and AEO, has been subject peer review, has been generally accepted, or has been put to non-judicial uses. None of these criteria are met in this case.  Thus, under the *Paoli II* factors, Walmart has not met its burden that Mr. Teshome's opinions are reliable.

With regard to fit, "[a]s gatekeeper, a trial judge [must] ensure the expert's testimony is 'sufficiently tied to the facts of the case' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591).  Walmart has not otherwise demonstrated that Mr. Teshome's report, which includes outdated survey data and arbitrary comparisons between Walmart and Target, without regard to their relationship with AEO.   Instead, the cross-

purchasing methodology, as presented in Mr. Teshome's report and as scrutinized above, would not assist the Court in determining Walmart's disgorgement of profits.  Thus, Walmart has not met its burden that Mr. Teshome's report meets the fit test under *Daubert*.

Accordingly, AEO's *Daubert* Motion to Exclude the testimony and report of Abel Teshome, on the basis of reliability and fit, will be granted.

ORDER

Following consideration of AEO's Motion (ECF No. 113), the respective briefs (ECF Nos. 114, 120, and 123), Declaration (ECF No. 121), the arguments of counsel, and for the following reasons, AEO's Motion to exclude the testimony of Abel Teshome, on the issue of disgorgement of profits under the Lanham Act, is granted.

Dated:  February 6, 2023.

Marilyn J. Horan
United States District Judge